**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
_____
                                 :
HEUNG WAH WONG,                  :
                                 :   Civil Action No. 05-5430 (DRD)
              Petitioner,        :
                                 :
         v.                      :       O P I N I O N
                                 :
ALBERTO R. GONZALEZ, et al.,     :
                                 :
              Respondents.       :
_____ :
```

**APPEARANCES:**

HEUNG WAH WONG, Petitioner, Pro Se
A#35-709-124
Monmouth County Jail
FED ID# 11517-265 ID#69454
One Waterworks Road
Freehold, New Jersey 07728

CHRISTOPHER J. CHRISTIE, United States Attorney
LEAH AMBER BYNON, Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, New Jersey  07102
Attorneys for Respondents

**DEBEVOISE, District Judge**

Petitioner, Heung Wah Wong ("Wong"), filed a Petition for

Writ of Habeas Corpus under 28 U.S.C. § 2241, on or about

November 16, 2005, in which he challenges his continued detention

as unlawful and unconstitutional.  At the time that he filed his

petition, Wong was being detained by the Department of Homeland

Security ("DHS"), Bureau of Immigration and Customs Enforcement

("BICE")[1] at an immigration detention facility in Paterson, New Jersey, pending his removal from the United States.  He has since been transferred to the Monmouth County Jail in Freehold, New Jersey.  Wong is still in DHS/BICE custody at this time.

The named respondents are Alberto R. Gonzalez, Attorney General of the United States; Michael Chertoff, DHS Secretary; John Carbone, Field Office Director of Detention and Removal; and Charles Myers, Warden of Passaic County Jail.  The Government wrote to the Court, by letter dated February 17, 2006, stating that Wong's removal is imminent since the stay of deportation entered by the United States Court of Appeals for the Fifth Circuit has recently been lifted.  For the reasons set forth below, the Court will deny the petition without prejudice.[2]

### BACKGROUND

Wong is a native of Hong Kong, China, and a citizen of the United Kingdom.  He entered the United States as a lawful permanent resident in 1976 with his mother and five sisters.  On

---

[1]  Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Bureau of Immigration and Customs Enforcement ("BICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

[2]  Wong also filed an application for appointment of counsel in this matter.  Because the petition for habeas relief will be denied, the motion for appointment of counsel is denied as moot.

August 11, 1997, an Immigration Judge ordered Wong's removal to

China,[3] and Wong was removed from the United States on October 8,

1997 after he waived an appeal from the removal order.  Sometime

thereafter, Wong re-entered the United States.  The BICE

encountered Wong on July 1, 2002 and the earlier order of removal

was re-instated.  On July 18, 2002, Wong was convicted of

aggravated illegal reentry.

In April 2003, Wong filed a habeas application challenging

his 2002 conviction for illegal reentry and the 1997 removal

order.  The action was transferred to the United States District

Court for the Southern District of New York.  On or about June 3,

2005, the 2002 conviction for illegal reentry was vacated by the

district court and the Government entered a "Nulle Prosequi".  On

August 30, 2005, the district court issued a stay of deportation

and transferred Wong's habeas petition to the United States Court

of Appeals for the Fifth Circuit, pursuant to the REAL ID Act of

2005.[4]  The Fifth Circuit adopted the stay of removal pending

further order from the court.  The petition for review of the

removal order remained pending in the Fifth Circuit when Wong

---

[3]  It appears that Wong's removal proceedings were based on
his convictions for aggravated felonies.  In particular, a 1992
conviction for attempted robbery and attempted criminal
possession of a weapon in the second degree.

[4]  The action was transferred to the Fifth Circuit because
the underlying deportation order was issued from the Fifth
Circuit.

filed this habeas action.  In fact, Wong filed an appellant's
brief in the Fifth Circuit on or about January 30, 2006.  On
February 17, 2006, the respondents wrote the Court and advised
that Wong's petition for review pending in the Fifth Circuit was
dismissed recently, and the stay of removal was lifted.
Accordingly, Wong's deportation is now imminent.  (Docket Entry
No. 14).

Wong filed this habeas petition on or about November 16,
2005 seeking his release from detention pending removal.  Wong
argues that his continued detention is unlawful and
unconstitutional under Zadvydas v. Davis, 533 U.S. 678 (2001)
because he has been detained for more than 40 months based on a
defective and illegal deportation.  He contends there are no
legitimate grounds for his continued detention pending removal,
in that he poses no flight risk and presents no danger to the
community.

Wong has asked the BICE to release him from custody.  In a
"file custody review" dated October 12, 2005, Wong was informed
that he was not approved for release because his "removal from
the United States appears imminent.  ICE has been advised by the
Consulate General of the United Kingdom that a travel document is
available upon receipt of a flight itinerary."  (Petition at
Exhibit H).  Further, BICE informed Wong that he is in custody
because the Government is currently precluded from enforcing

petitioner's removal based on the stay of removal issued by the court on Wong's habeas petition.  (Id.).

### ANALYSIS

### A.    Standard of Review

Wong seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Here, petitioner challenges his continued detention for over 40 months.  As stated above, Wong claims that his continued detention is constitutionally impermissible and unlawful because he has been held for more than six months and his removal is not foreseeable.  See Zadvydas, 533 U.S. 678.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Respondents contend that the recent lifting of the stay of removal, and the fact that Wong's deportation is imminent, renders this habeas petition moot.

For the reasons stated below, the Court finds that Wong's continued custody does not violate federal statutory or constitutional law at this time.

**B.   Wong's Detention Complies with Federal Law**

Post-removal-order detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days.  However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard.  Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable.  See Zadvydas v.

Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

In addition § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."

Here, petitioner argues that he should not be subject to incarceration simply because he secured a stay of removal, especially where his detention has exceeded 40 months.  However, it has been held that the six-month presumptively reasonable post-order removal period of Zadvydas is tolled when an alien requests judicial review of a removal order.  See Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004)(detention "directly associated with a judicial review process that has a definite and evidently impending termination point" is "more akin to detention during the administrative review process, which was upheld [by the Supreme Court]")(citing Demore v. Kim, 538 U.S. 510, 527-29 (2003)); Wang v. Ashcroft, 320 F.3d 130, 145-47 (2d Cir. 2003)("where a court issues a stay pending its review of an administrative removal order," the post-order detention provisions of § 1231 do not apply because "the removal period commences on 'the date of the court's final order'"); Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002)(by applying for stay, petitioner interrupted the running of the time under

Zadvydas); Evangelista v. Ashcroft, 204 F. Supp.2d 405, 409 (E.D.N.Y. 2002)(petitioner's reliance on Zadvydas to be released from detention is "disingenuous" when sole reason being held is his requested stay of deportation); Hines-Roberts v. Ashcroft, 2003 WL 21305471 at *3 (D. Conn. Jun. 5, 2003)(unpubl.)(as a result of stay of deportation, Attorney General could not seek to bring about petitioner's deportation, and therefore, period of detention does not raise due process issue presented in Zadvydas); Archibald v. INS, 2002 WL 1434391 at *8 (E.D. Pa. July 1, 2002) (unpubl.) (because petitioner asked for and was granted stay of deportation, he is not being held in violation of Zadvydas, but rather held pursuant to stay he requested).

Here, a stay of the removal was granted in the Second Circuit on or about August 30, 2005.  The matter was transferred to the Fifth Circuit, which continued the stay of removal pending its review of the case.  As the stay was still in effect when Wong filed his habeas petition, and until only recently, the presumptively-reasonable six-month period technically had not yet begun to run pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii).  Moreover, now that the petition for review has been dismissed and the stay of removal lifted by the Fifth Circuit, Wong's order of removal has become final and the 90-day removal period has only recently commenced.  There is no indication in the record that Wong's removal to the United Kingdom is not reasonably foreseeable.

Travel documents have been requested and there is nothing to
indicate that such travel documents will not be issued now that
the stay of removal is lifted.  Indeed, on October 17, 2005, the
decision to continue detention was issued partly on this ground
that a travel document is available upon request to the United
Kingdom Consulate General upon receipt of a flight itinerary.
(Petition, Ex. H).  Accordingly, it would appear that Wong's
post-removal-order detention is statutorily compliant.

     Nevertheless, as argued by Wong in his habeas petition here,
under certain circumstances, the sheer length of an alien's
prolonged detention may violate his right to due process under
the Fifth Amendment.[5]  In <u>Oyedeji v. Ashcroft</u>, 332 F. Supp.2d
747, 753 (M.D. Pa. 2004), the district court noted that the
"price for securing a stay of removal should not be continuing

---

     [5]  In this regard, the Court notes the parallel to <u>Zadvydas</u>,
which recognized the constitutional implications of prolonged
detention for those aliens subject to a final order of removal.
Realistically, the prolonged confinement of those detainees whose
potentially meritorious challenge to removal is part of a
congested court docket is indistinguishable from the indefinite
detention of those aliens whose native countries refuse
repatriation.  Furthermore, this concern for an unjustified
continuing detention for those aliens pending administrative
removal proceedings was discussed by Justice Kennedy in his
concurring opinion in <u>DeMore v. Kim</u>, 538 U.S. 510, 523 (2003).
The Supreme Court stressed that mandatory detention of aliens
pending their administrative removal proceedings was justified
only "for the brief period necessary for their removal
proceedings."  538 U.S. at 513.  However, Justice Kennedy
recognized that lawful permanent resident aliens "could be
entitled to an individualized determination as to his risk of
flight and dangerousness if the continued detention became
unreasonable or unjustified."  <u>Id</u>. at 523.

incarceration."   Thus, under the Due Process Clause of the Fifth

Amendment, Wong, a deportable alien, should be afforded an

opportunity to be heard on the question of conditional release

pending judicial review of a final administrative order of

removal, the execution of which has been stayed by judicial

order.   See Oyedeji, 332 F. Supp.2d at 753-754; Harrison v.

Hogan, 2005 WL 2020711 (M.D. Pa. July 18, 2005); Haynes v.

Department of Homeland Security, 2005 WL 1606321 (M.D. Pa. July

8, 2005).

     The Supreme Court recognized that "[f]reedom from

imprisonment -- from government custody, detention, or other

forms of physical restraint -- lies at the heart of the liberty

that [the Fifth Amendment's Due Process] Clause protects."

Zadvydas, 533 U.S. at 690; Tineo v. Ashcroft, 350 F.3d 382, 398

(3d Cir. 2003).   Indeed, the Third Circuit has held that

> [w]hen detention [of an alien] is prolonged, special care
> must be exercised so that the confinement does not continue
> beyond the time when the original justifications for custody
> are no longer tenable.  The fact that some aliens posed a
> risk of flight in the past does not mean they will forever
> fall into that category.  Similarly, presenting danger to
> the community at one point by committing crime does not
> place them forever beyond redemption.

Ngo v. INS, 192 F.3d 390, 398 (3d Cir. 1994).   The fact that a

stay of removal has been issued should not change this result.

See Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003)(an alien not

normally subject to indefinite detention as in Zadvydas should

not be detained simply because he seeks avenues of relief legally

available to him; while the alien may be responsible for seeking

a stay of removal, he is not responsible for the length of time

such determinations may take); Oyedeji, 332 F. Supp.2d at 753

(the price for securing a stay of removal should not be

indefinite detention).

In this case, it appears that Wong was afforded due process

because he received a custody review of his continuing detention

pending removal pursuant to 8 C.F.R. § 241.4(i).[6]  These rules

essentially echo the principles set forth in Ngo, which then

---

[6]  The rules evaluated by the Third Circuit in Ngo are no
longer in force, but 7 elements listed in NGO offer guiding
principles by which to measure the current review procedures now
in effect at 8 C.F.R. § 241.4.  For instance, under 8 C.F.R. §
241.4(i), the Director of the Headquarters Post-Order Detention
Unit ("HQPDU") is required to designate a two-person panel to
make recommendations on whether an alien should be released or
detained.  This recommendation must be unanimous.  The review
panel examines the alien's records.  If the panel does not
recommend release, or if the HQPDU Director rejects a
recommendation for release, the alien shall be personally
interviewed by the review panel.  The alien may have a
representative at this interview, subject to reasonable security
concerns, and he may submit any information he believes may be
pertinent in securing his release.

Under 8 C.F.R. § 241.4(d), an alien may obtain a conditional
release from detention by showing that his release will not pose
a significant risk of flight and danger to the community, to the
safety of others or to property pending removal.  Under 8 C.F.R.
§ 241.4(e), an alien is eligible for release if the review panel
or the HQPDU Director find that the following criteria are met:
(1) travel documents are not available or immediate removal is
otherwise not practicable or not in the public interest; (2) the
alien is presently a non-violent person; (3) the alien is likely
to remain non-violent if released; (4) the alien is not likely to
pose a threat to the community if released; (5) the alien is not
likely to violate the conditions of release; and (6) the alien
does not pose a significant flight risk if released.

provided for the following due process safeguards: (1) advance
written notice to alien of an opportunity to present information
supporting release; (2) the alien has a right to representation
at the review; (3) the alien has a right to an annual personal
interview; (4) written explanations for a custody decision must
be provided; (5) an opportunity for administrative review must be
given; (6) custody reviews should occur every six months; and (7)
a refusal to presume continued detention based on criminal
history.  Ngo, 192 F.3d at 399.  The Third Circuit held that
these provisions, if conscientiously applied, gave reasonable
assurance of fair consideration of a petitioner's application for
conditional release pending removal.  Id.

     Here, Wong admits that he has received a custody review as
recently as October 2005.  This custody review resulted in a
decision to continue custody because Wong's past criminal history
of serious and violent crimes suggests that he poses a threat to
the community.  Moreover, the decision to continue custody was
based on Wong's removal being imminent since the Consulate
General of the United Kingdom advised the BICE that a travel
document for Wong is available upon their receipt of a flight
itinerary.  Further, custody was continued due to the judicial
stay of removal.  (Petition, Ex. H).

     The Court does note, however, that the custody review may
have been perfunctory.  There is no indication whether this

12

custody review included an examination of Wong's file by the BICE reviewing officials, and a personal interview with the review panel since his release from detention was not initially approved.  The decision merely states that Wong is not being released pending his removal because his removal is imminent and because he presents a flight risk.  The decision acknowledges that a stay of removal was issued precluding the BICE from enforcing deportation at this time.

Nevertheless, this Court has carefully reviewed the petition and relevant documents provided, and giving due consideration to petitioner's arguments, finds that, at this time, Wong has received the process to which he was due with respect to his continuing detention pending removal.  Wong received a recent custody review in October 2005.  Even if the review was somewhat perfunctory, there is no dispute that Wong's removal to the United Kingdom is imminent now that the stay is lifted since the consular officials have assured that travel documents will be available upon receipt of a flight itinerary.  The Court is not inclined to find the BICE decision to continue custody to be anything other than a meaningful individualized determination of Wong's status pending adjudication of the validity of his removal order, given the fact that Wong's removal is plainly imminent. Accordingly, the Court concludes that Wong's detention is not constitutionally impermissible at this juncture.  The petition

13

will be denied without prejudice to Wong reasserting his claims

regarding continued detention if the BICE does not remove Wong

within the prescribed time now that the stay has been lifted and

to provide adequate due process in that event.

## CONCLUSION

For the reasons set forth above, this petition will be

denied, without prejudice to Wong bringing a new petition if the

Government fails to remove him in the reasonably foreseeable

future now that the stay of removal.  Wong's application for

appointment of counsel (Docket Entry No. 2) is denied as moot.

An appropriate order follows.


 **/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE
United States District Judge


Dated: April 11, 2006